## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION
## CIVIL ACTION NO. 3:23-CV-00344-CRS

**MARY E. O.**                                                          **PLAINTIFF**

**VS.**

**MARTIN O'MALLEY,**
*Commissioner of Social Security[1]*                                   **DEFENDANT**

## REPORT AND RECOMMENDATION

Claimant Mary E. O. appeals from the final determination of the Commissioner of Social Security denying her application for disability insurance benefits. (DN 1). Claimant has filed a Fact and Law Summary and Brief. (DN 11; DN 12). The Commissioner has responded in a Fact and Law Summary. (DN 16). Claimant filed a Reply Brief (DN 17). The District Judge has referred the case to the undersigned United States Magistrate Judge for consideration and preparation of a Report and Recommendation, as authorized in 28 U.S.C. § 636(b)(1)(B). (DN 10).

### I. Findings of Fact

Mary E. O. ("Claimant") applied for disability insurance benefits under Title II on January 18, 2019, alleging disability beginning on July 1, 2018. (Transcript, hereinafter, "Tr." 389-90). Nearly two months later, Claimant amended her application for benefits to state that her disability began on September 13, 2018. (Tr. 392). She alleged disability based on thyroid disease, diabetes, high blood pressure, headaches, depression, and anxiety. (Tr. 415). Claimant's applications were denied at both the initial and reconsideration levels. (Tr. 152, 154).

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley is substituted for Kilolo Kijakazi as Defendant in this case.

At Claimant's request, Administrative Law Judge Jennifer Thomas ("ALJ Thomas") conducted a hearing in Paducah, Kentucky on August 12, 2020. (Tr. 94). Claimant attended the hearing by telephone with her attorney.[2] (*Id.*). An impartial vocational expert also participated in the hearing. (*Id.*). Claimant's counsel maintained that Claimant should be limited to work at the light exertional level, which would eliminate her past relevant work, and would meet medical vocational guideline 202.04. (Tr. 103).

During the hearing, Claimant testified to the following. She is a high school graduate and lives in a house with her husband and dog. (Tr. 99, 100). She drives but has some issues because of dizziness. (Tr. 100). Her past work includes working the drive-thru at McDonald's and performing administrative work at a bank. (Tr. 101). When asked why she stopped working, she stated she "couldn't keep up with it[.]" (Tr. 107). As for her anxiety and depression, Claimant states she feels "blah," like she can't do anything.[3] (Tr. 112). She feels like crying all of the time. (*Id.*). She feels that nothing goes her way, which makes her feel frustrated and depressed. (Tr. 113). She does not suffer from panic attacks. (*Id.*). Claimant indicated she cannot get the medical treatment she needs because she cannot afford it. (*Id.*).

ALJ Thomas asked the vocational expert whether a hypothetical individual with Claimant's age, education, and past work experience, could perform a medium range of work with some additional physical restrictions and the following mental limitations: could understand, remember, and carry out simple, routine tasks could sustain concentration, persistence and pace for the completion of simple, routine tasks in two hour segments for an eight hour workday, and could adapt to situational demands of a simple, routine work environment. (Tr. 118). The vocational

---

[2] This hearing was held telephonically due to the Covid-19 pandemic with Claimant's consent. (Tr. 96-97).

[3] Claimant testified regarding her physical symptoms, including daily dizziness, headaches, fatigue, and swelling of her feet. (Tr. 103-115). But because Claimant's current claims deal only with the ALJ's evaluation of her mental impairments, the undersigned will not further discuss her testimony regarding her physical impairments.

expert responded that Claimant's prior work as a cashier would satisfy this hypothetical, along with additional jobs as a dining room attendant, women's room attendant, and laundry worker. (*Id.*). The vocational expert testified that if the hypothetical were changed from medium to light work, missing two days a month, there would be no work in the national economy for such person. (Tr. 118-19). Claimant's counsel also inquired whether a hypothetical individual moderately limited in their ability to respond appropriately to coworkers and work pressures in a work setting or moderately limited in the ability to tolerate stress and pressure of day-to-day employment could sustain the previously listed jobs. (Tr. 120). The vocational expert testified that the previously identified jobs would be precluded by either of those additional moderate limitations. (Tr. 120-21).  ALJ Thomas then returned to her initial hypothetical individual and asked whether limiting such person to frequent interaction with coworkers, supervisors, and the public would preclude Claimant's previous job as a fast work worker. (Tr. 122). The VE responded fast-food work would still be available. (*Id.*).

Following the hearing, ALJ Thomas issued interrogatories to a different vocational expert. (Tr. 512-14). The interrogatory presented a hypothetical individual limited to medium work, with the following mental restrictions: can understand, remember, and carry out simple routine tasks; can sustain concentration, persistence, and pace for the completion of simple routine tasks in 2-hour segments of time in an 8-hour workday; can have frequent contact with coworkers, supervisors, and the public; and can adapt to situational demands in a simple, routine work environment. (Tr. 512). The second VE responded that such an individual could not perform fast food work because they would "have days with more than frequent contact with the public and coworkers" and the tasks would not be routine, since there are always different duties, at different times in fast food work. (*Id.*). Nor could such an individual perform secretarial work, according

the second VE, because it is a skilled position that requires more than simple routine tasks. (Tr. 513). The VE indicated, however, that such an individual could perform work as a bundle clerk, a cleaner II (auto), or a store laborer, that each exist in significant numbers in the national economy. (*Id.*).

After receiving the interrogatory responses, Claimant requested a supplemental administrative hearing. (Tr. 518). ALJ Thomas convened the supplemental hearing on March 10, 2021. Claimant and a third vocational expert provided testimony.[4] (Tr. 68-71). During this second hearing, Claimant's testimony largely mirrored that from the first hearing. Claimant again testified she does not see a mental health professional or therapist because she can't really afford it. (Tr. 79). ALJ Thomas presented a hypothetical individual to the third VE, that included a restriction of frequent interaction with coworkers, supervisors, and the public. The third VE ruled out Claimant's past relevant work under this hypothetical because "the fast food and [] secretary [require] constant contact with the general public." (Tr. 89).

Applying the five-step sequential evaluation process promulgated by the Commissioner, 20 C.F.R. § 404.1520(a), ALJ Thomas found Claimant had not been under a disability from September 13, 2018, through the date of decision, March 30, 2021. (Tr. 174-183). ALJ Thomas determined Claimant had the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) but that she should "never climb ladders, ropes or scaffolds . . . should not be exposed [to] workplace hazards such as pulmonary irritants (fumes, odors, dusts, gases, and poor ventilation), [and] needs ready access to the restroom – no more than a five-minute walk from the workstation." (Tr.  178). Under this RFC, ALJ Thomas found Claimant could perform her past relevant work as a fast-food cashier and secretary. (Tr. 181).

---

[4] This hearing was also held telephonically due to the Covid-19 pandemic with Claimant's consent. (Tr. 71).

Claimant promptly filed a Request for Review. (Tr. 326-28; 523-25). On April 27, 2022, the Appeals Council vacated ALJ Thomas' March 30, 2021 decision and remanded the case for resolution of three issues: (1) further evaluation of claimant's environmental restrictions; (2) further consideration of the relevant listings at 1.00, 3.00, and 9.00 and SSR 19-4p; and (3) further evaluation of the opinion evidence consistent with 20 CFR 404.1520c. (Tr. 191-92).

On September 20, 2022, ALJ Thomas convened a third administrative hearing, as contemplated by the Appeals Council's remand order.[5] (Tr. 35). Claimant and a fourth vocational expert testified. (*Id.*). Claimant testified regarding some changes in her physical abilities since the date of ALJ Thomas' decision. (Tr. 44-57). Claimant did not discuss her anxiety or depression. When asked about insurance, Claimant explained that she hasn't applied because she didn't think she'd be able to get it and she cannot afford to join her husband's plan. (Tr. 53-54).

On October 5, 2022, ALJ Thomas issued an unfavorable decision. Again applying the five-step sequential analysis from 20 C.F.R. § 404.1520(a), ALJ Thomas made the following findings. First, Claimant has not engaged in substantial gainful activity since September 13, 2018, her alleged onset date. (Tr. 20). Second, Claimant has the following severe impairments: diabetes mellitus, mild degenerative disc disease of the thoracic spine, asthma, and migraine headaches. (*Id.*). ALJ Thomas also determined Claimant's depression and anxiety were not severe and that she had only mild limitations in the four functional areas known as the "paragraph B criteria." (Tr. 21). Third, Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 22). Fourth, Claimant has the residual functional capacity to perform "light work" with the following exceptions:

---

[5] Once more, this hearing was also held telephonically due to the Covid-19 pandemic with Claimant's consent. (Tr. 37-38).

> She could never climb ladders, ropes, or scaffolds but can occasionally climb ramps or stairs. She can have no more than occasionally [sic] be exposed to concentrated atmospheric conditions as defined by the Selected Characteristics of Occupations/Dictionary of Occupational Titles. She can occasionally stoop, kneel, crouch, and crawl. She should have no exposure to workplace hazards such as moving mechanical parts and unprotected heights.

(Tr. 23). Additionally, at Step Four, ALJ Thomas found Claimant is capable of performing her past relevant work as a cashier and secretary because such work was not precluded by her RFC. (Tr. 26). Based on these findings, ALJ Thomas did not proceed to Step Five.

ALJ Thomas concluded Claimant was not under a disability, as defined in the Social Security Act from September 13, 2018 through the date of this decision. (Tr. 27). Claimant appealed ALJ Thomas' decision. (Tr. 383-85). The Appeals Council declined review, finding Claimant's reasons for disagreement did not provide a basis for changing ALJ Thomas' decision. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

## II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of

credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

### III. Analysis

Claimant challenges ALJ Thomas' evaluation of her mental impairments throughout her opinion. First, Claimant argues ALJ Thomas erred in evaluating the mental medical opinions in her RFC determination, which also resulted in misapplication of the step-two severity standard for her mental impairments. (DN 11, at PageID # 884-90). Second, Claimant asserts ALJ Thomas' finding that Claimant can perform her past relevant work is based on legal error because ALJ Thomas failed to account for the mental limitations she found credible in her RFC analysis. (*Id.* at PageID # 883, 890-98).

### (1) ALJ Thomas' Evaluation of the Mental Medical Opinions

Claimant believes ALJ Thomas did not properly evaluate the supportability and consistency of the mental medical opinions of record, as required by the regulations. According to Claimant, every mental medical opinion of record showed she has severe mental impairments

causing moderate limitations in her ability to work but ALJ Thomas contrarily concluded her mental impairments had minimal impact on her functioning and required no mental RFC accommodations. (*Id.* at PageID # 884-85 (citing Tr. 144-145, 147-150, 164-165, 167-169, 664-668)). The "inherent evidentiary value" from the consistent findings of these medical professionals, Claimant reasons, required ALJ Thomas to explain why she was rejecting the consistent medical opinion findings. (*Id.* at PageID # 886). Claimant also challenges ALJ Thomas' failure to appropriately evaluate the supportability of the mental medical opinions because she only referenced Claimant's lack of ongoing mental health treatment. (*Id.* at PageID # 888-89). Per Claimant, no actual evidence contradicted the consistent mental medical opinions opining Claimant was moderately limited, meaning ALJ Thomas impermissibly relied on her own lay interpretation of the evidence. (*Id.*).

Within this argument, Claimant also seems to challenge the ALJ's step-two conclusion that Claimant's mental impairments of anxiety and depression were not severe. (*Id*. at PageID # 887). Any doubt about whether she met the step two severity requirement for her mental impairments should have been resolved in her favor, Claimant contends. (*Id.*).

The Commissioner responds that the ALJ appropriately found the mental medical assessments were not persuasive in light of the overall evidence, specifically, the objective medical evidence and treatment records demonstrating generally unremarkable or normal mental health findings. (DN 16). The Commissioner highlights how ALJ Thomas considered Claimant's lack of ongoing mental health treatment and records, which state Claimant's conditions improved with a conservative course of medication. (DN 16, at PageID # 915 (citing *Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 678 (6th Cir. 2013))). As for consistency, the Commissioner indicates ALJ Thomas assessed Claimant's RFC without mental limitations based on record evidence, including

unremarkable mental status exam findings and her lack of ongoing mental health treatment. There was simply no support in the record for the opined restrictions, the Commissioner concludes.

In reply, Claimant argues the Commissioner misinterprets the requirements of a consistency analysis by asserting that medical opinions are not included within the medical evidence to be considered under 20 C.F.R. § 404.1520c. (DN 17, at PageID # 931). Claimant asserts the Commissioner is ignoring the opinions of three different medical professionals that found she was experiencing severe mental impairments resulting in moderate limitations by claiming such opinions are not medical evidence. (*Id.* at PageID # 931-32). These three medical professionals, Claimant emphasizes, also considered that Claimant had conservative mental health treatment but still found she was moderately limited based on the supportive medical evidence. (*Id.* at PageID # 932). Claimant indicates that a lack of treatment, standing alone, does not contradict the consistent opinions of the medical professionals. (*Id.*). Additionally, Claimant believes the Commissioner is attempting to substitute a sufficient consistency explanation by relying on ALJ Thomas' unnecessary findings regarding non-required "other factors" under 20 C.F.R. §§ 404.1520c(b)(2-3), (c).

Starting with Claimant's cursory argument regarding ALJ Thomas' step-two severity analysis, the Court finds no error. ALJ Thomas determined Claimant had several severe impairments (diabetes mellitus, mild degenerative disc disease of the thoracic spine, asthma, and migraine headaches) but found Claimant's "reported mental health limitations associated with depression and anxiety" did not cause "more than minimal limitation in [her] ability to perform basic mental work activities and are therefore nonsevere." (Tr. 21). In so concluding, ALJ Thomas noted that Claimant's testimony regarding the severity of her symptoms was inconsistent with her minimal treatment history of only psychotropic medication prescribed by her nurse practitioner

9

and that Claimant's treating providers found her symptoms were "better" with medication. (*Id.*). ALJ Thomas further noted that Claimant has "not sought supportive counseling, cognitive behavior therapy, support groups, or other specialized mental health treatment" and has not required "crisis intervention, inpatient psychiatric hospitalization, or other intensive mental health treatment." (*Id.*). Additionally, ALJ Thomas cited treatment notes repeatedly indicating Claimant's normal mood, pleasant affect, good memory, and full orientation (*Id.* (citing Exs. B11F and B16F)) and demonstrated normal memory, normal attention/concentration, full orientation, and appropriate affect during the consultative examination (*Id.* (citing Ex. B5F)).

In analyzing whether Claimant's mental impairments were "severe," ALJ Thomas considered the four broad functional areas known as the "paragraph B" criteria and found Claimant had only mild limitation in each area. For the first area of functioning, "understanding, remembering, or applying information," ALJ Thomas found no more than mild limitation because the record contains no evidence of cognitive deficits and, on examination, Claimant's intellectual functioning fell within the average range and she exhibited average fund of knowledge. (*Id.* (citing Ex. B5F)). ALJ Thomas likewise found no more than mild limitation in the second area of functioning, "interacting with others," because Claimant spends time with others on a regular basis, has no problems getting along with friends, family, and neighbors, was noted as cooperative and responsive, and is not receiving any type of mental health therapy or counseling. (*Id.* (citing Exs. B5E, B5F)). Similarly, ALJ Thomas found no more than mild limitation in the third area of functioning, "concentrating, persisting, or maintaining pace," since her consultative examination revealed normal attention and concentration. (*Id.*). As to the fourth area of functioning, "adapting or managing oneself," ALJ Thomas again found no more than mild limitation based on her ability to care for her personal needs, prepare simple meals, perform light household chores, drive, shop,

and manage her finances, while needing some reminders or prompts from family members. (Tr.

22 (citing Ex. B5E). Concluding this analysis, ALJ Thomas clarified that:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(*Id.*).

The Sixth Circuit construes the claimant's step-two burden as "a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). An impairment is only considered not severe "if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* at 862. This step is meant to be "an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Id.* at 863 (quoting *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985)). Accordingly, Sixth Circuit caselaw establishes that an ALJ's failure to find an impairment severe at step two is not reversible error, so long as the ALJ found another impairment was severe and thus continued with the five-step evaluation. *See Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *see also Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008). In other words, where a claimant establishes at least one severe medically determinable impairment, the ALJ must consider the limiting effects of all a claimant's impairments, severe or not, when assessing the claimant's residual functional capacity determination. 20 C.F.R §§ 404.1523, 416.923.

While reasonable doubts on severity should be resolved in favor of the Claimant, *see* SSR 85-28, 1985 WL 56856, at *4, if the Claimant's degree of limitation is none or mild, the

Commissioner will generally conclude the impairment is not severe, 20 C.F.R. § 404.1520a(d). That is unless "the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities. 20 C.F.R. § 404.1520a(d). Here, ALJ Thomas supported her findings that Claimant had no more than mild limitation in each of the four "Paragraph B" criteria with citations to record evidence. And in analyzing Claimant's anxiety and depression, ALJ Thomas discussed Claimant's minimal mental health treatment and her treating providers' normal mental health examinations. Claimant does not point to evidence indicating she has more than minimal limitation in her ability to do basic work activities, and, therefore, ALJ Thomas did not err in finding her mental impairments to be non-severe at step two.[6]

Turning to ALJ Thomas' evaluation of the mental opinion evidence in the record, the Court again finds no reversible error. A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). Put otherwise, the RFC is the most a claimant can do despite their physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ bases their RFC determination on "all of the relevant medical and other evidence" in the case record. *Id.* (a)(3). This requires the ALJ to evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

In this case, the new regulations for evaluating medical opinion evidence apply because Claimant filed her applications after March 27, 2017. *See* 20 C.F.R. § 404.1520c. The new regulations specify that an ALJ will not give any specific evidentiary weight to any medical opinion, even the opinions of a claimant's treating physician. *Id.* ALJs now evaluate the

---

[6] Whether ALJ Thomas properly considered the limiting effects of Claimant's anxiety and depression in the residual functional capacity will be addressed when evaluating Claim II below.

"persuasiveness" of medical opinions using five factors: (1) supportability; (2) consistency; (3) relationship to the claimant; (4) specialization; and (5) other factors. *Id.* (c)(1)-(5). Of these factors, supportability and consistency are the most important. *Id.* (a), (b)(2). The regulations, accordingly, require ALJs to explain how they considered the supportability and consistency factors in their determination. *Id.* (b)(2). Comparatively, ALJs "may, but are not required to, explain" their consideration of factors (3)-(5). *Id.*

In assessing a medical opinion's "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). And the "consistency" factor denotes the extent to which the medical opinion "is consistent with the evidence from other medical sources and nonmedical sources in the claim[.]" *Id.* (c)(2). To further illuminate this distinction, "supportability" relates to the objective medical evidence and supporting explanation provided by a medical source to bolster their *own* opinion; by contrast, "consistency" relates to the relationship of a medical source's opinion to *other* medical opinions and evidence of record. 20 C.F.R. § 416.920c(c)(1)-(2); *Kenneth B. v. Comm'r of Soc. Sec.*, No. 3:22-CV-00672-CHL, 2024 WL 1199025, at *6 (W.D. Ky. Mar. 20, 2024).

Toward the end of her RFC analysis, ALJ Thomas evaluated the opinions of two state agency psychological consultants and the opinion of consultative psychological examiner Dr. Gregory Lynch. (Tr. 26). ALJ Thomas noted how the State agency psychological consultants reviewed the evidence and found Claimant "could understand and remember simple and detailed instructions, sustain attention and concentration for two-hour segments, interact frequently with peers and supervisors and occasionally with the public, and adapt to situational changes (*Id.* (citing Exhibit B5A)). ALJ Thomas found the consultants' opinions were "not persuasive" because the

record contains no ongoing mental health treatment to support severe mental limitations and Claimant's lack of longitudinal mental health treatment fails to support any moderate limitations. (*Id.*). To further support this determination, ALJ Thomas noted that Claimant's recent testimony did not include any allegations about her mental health limitations, which suggests they do not significantly affect her functioning; Claimant denied mood changes or depression (*Id.* (citing Ex. B3F)); and Claimant's treating providers indicated she demonstrated appropriate mood and normal affect (*Id.* (citing Exs. B4F, B16F)).

As for Dr. Lynch's opinion, ALJ Thomas noted his assessment that Claimant has "no limitations in her ability to sustain concentration, slight limitations in her ability to understand and carry out simple tasks and slight-to-moderate limitations in her ability to tolerate work stress and respond appropriately to others in a work setting. (*Id.* (citing Ex. B5F)). Finding Dr. Lynch's opinion to be "partially persuasive," ALJ Thomas reasoned that Dr. Lynch evaluated Claimant only once and did not review Claimant's record as a whole. (*Id.*). ALJ Thomas described how Claimant's treating providers noted Claimant presented with normal mood, pleasant affect, and good memory and that recent treatment notes also indicated Claimant's appropriate mood and affect. (*Id.* (citing Exs. B11F, B16F)). ALJ Thomas concluded these clinical findings, combined with Claimant's lack of ongoing mental health treatment, failed to support any more than mild mental limitations, contrary to several of Dr. Lynch's opined restrictions. (*Id.*).

ALJ Thomas considered the consistency of the state agency psychological opinions and Dr. Lynch's opinion by comparing their opined restrictions to the record evidence, including Claimant's recent testimony, objective findings from Claimant's treating providers, and the overall lack of ongoing mental health treatment. But Claimant believes ALJ Thomas should have evaluated the consistency among these state agency psychological opinions and Dr. Lynch's

opinions, since consistent medical opinions provide "inherent evidentiary value." The Court disagrees for several reasons.

First, purported consistency of medical opinions of record does not automatically render them persuasive. Claimant cites to no case law or regulations supporting the notion that an ALJ must adopt consistent medical opinions in determining a claimant's RFC. Second, the state agency psychological opinions and Dr. Lynch's opinion, while sharing some similarities, are not entirely consistent. For instance, the State agency psychological consultants determined Claimant could sustain attention and concentration for two-hour segments; whereas Dr. Lynch found Claimant had no limitation in sustaining concentration. And the limitations that could be considered "consistent" from the State agency psychologists' opinions and Dr. Lynch's opinions were not supported by record evidence, as discussed in detail below.

Claimant alleges ALJ Thomas "at the very least" should have considered the consistency of such opinions with one another. Arguably, ALJ Thomas did. Though she did not explicitly state whether she found these opinions to be consistent, she described the physicians' opined restrictions and found them both to be largely inconsistent with the record evidence. This analysis permits the Claimant to understand why ALJ Thomas found neither opinion consistent with the record evidence. No reversible error is present.

The Court turns now to ALJ Thomas' evaluation of the "supportability" factor for each opinion. ALJ Thomas did not discuss the internal supportability of the State agency psychological consultants' opinions but with good reason. The State agency psychological consultants here did not examine Claimant, meaning there is not objective diagnostic testing or observation from those reviewers from which ALJ Thomas could have assessed supportability. *See Kenneth B. v. Comm'r of Soc. Sec.*, No. 3:22-CV-00672-CHL, 2024 WL 1199025, at *6-7 (W.D. Ky. Mar. 20, 2024)

(noting the opinions of state agency medical and psychological consultants are "uniquely situated" in terms of an ALJ's ability to conduct both a supportability and consistency analysis) (quoting *Tyrone H. v. Comm'r of Soc. Sec.*, No. 2:22cv-3652, 2023 WL 2623571, at *6-7 (S.D. Ohio Mar. 24, 2023)). Accordingly, ALJ Thomas' discussion of the record evidence can be understood to touch upon both supportability and consistency, as required by the regulations. ALJ Thomas' evaluation of the state agency psychological opinions provides a detailed and logical path of reasoning, is supported by substantial evidence in the record, and complies with the applicable regulations.

ALJ Thomas likewise failed to articulate whether Dr. Lynch's opinion was internally supported. And unlike the State agency evaluations, since Dr. Lynch evaluated the Claimant and made findings based on his objective observations, ALJ Thomas' failure results in error. An ALJ's failure to properly apply the regulations, however, may be considered harmless where "the goal of the regulation was otherwise met." *Lorraine R. v. Comm'r of Soc. Sec.*, No. 3:20-cv-00396, 2022 WL 4232839, at *5 (S.D. Ohio Sept. 14, 2022); *see also Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170, at *6 (E.D. Mich. Aug. 13, 2021) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)). The articulation requirement from the regulations for weighing medical opinions serves several purposes, one of which is "maintaining public confidence in the basic fairness of the administration of the Social Security program to have disappointed claimants at least understand why the government has rejected [an] opinion[.]" *Smalley v. Comm'r of Soc. Sec.*, No. 20-1865, 2021 WL 4026783, at *4 (6th Cir. Sept. 3, 2021).

The question then is whether the goal of § 404.1520c(b)(2) was met through ALJ Thomas' evaluation of Dr. Lynch's opinion. Or stated otherwise, the Court must decide whether ALJ Thomas' explanation is sufficient to permit meaningful judicial review and enable the Claimant to

understand why she determined Dr. Lynch's opinion was "partially persuasive." *See Jenna B. v. Comm'r of Soc. Sec.*, No. 3:21-cv-00176, 2022 WL 4395682, at *9 (S.D. Ohio Sept. 23, 2022). The Court finds it is. Though ALJ Thomas did not specify which portions of Dr. Lynch's opinion she found persuasive, she declined to add any mental restrictions to Claimant's RFC. ALJ Thomas' RFC and analysis of Dr. Lynch's opined restrictions read together permit the Claimant to understand that ALJ Thomas found unpersuasive any restriction beyond mild mental limitations based on the record evidence and Claimant's overall lack of mental health treatment. ALJ Thomas thus implicitly credited Dr. Lynch's finding that Claimant had no limitation in sustaining concentration and only slight limitation in understanding and carrying out simple tasks. (Tr. 26). While ALJ Thomas implicitly rejected Dr. Lynch's determination that Claimant had slight-to-moderate limitations in her ability to tolerate work stress and respond appropriately to others in a work setting. (*Id.*).

Moreover, a review of the objective observations from Dr. Lynch's evaluation reveals inconsistency with his conclusion that Claimant is slightly-to-moderately limited in her ability to tolerate work stress and respond appropriately to others in a work setting. During the exam, Dr. Lynch observed Claimant as "adequately cooperative" and exhibiting "variable and appropriate affect." (Tr. 667). Claimant's social maturity, to Dr. Lynch, "seemed adequate." (*Id.*). Dr. Lynch's recounting of Claimant's subjective reports further contradicts his conclusion as to slight and moderate limitation in tolerating work stress and responding appropriately to others in a work setting. He discussed that Claimant sees friends at church, talks to her mother weekly, sees other family members monthly, and shops twice a month. (Tr. 666). None of the information in Dr. Lynch's consultative examination report supports his later conclusion that Claimant would have moderate limitation in tolerating work stress and responding appropriately to others in a work

setting.

For these reasons, the Court finds ALJ Thomas properly weighed the psychological medical opinions of record and complied with the spirit of the regulations. Any error in the evaluation of Dr. Lynch's opinion was harmless.

(2) ALJ Thomas' Evaluation of Claimant's Mental Impairments Generally in RFC

Next, Claimant asserts ALJ Thomas failed to properly evaluate her non-severe impairments of depression and anxiety in the RFC. According to Claimant, ALJ Thomas should have included Claimant's mild limitation in her ability to interact with others in the workplace in a hypothetical to the VE because Claimant's previous occupations both require "significant" interactions with others in the workplace. (DN 11, at PageID # 892-93). Claimant argues ALJ Thomas fails to account for this contradiction. Relying on cases from other districts, Claimant posits that "mild limitations" are not meaningless and must be incorporated into RFC determinations. Claimant also believes ALJ Thomas exaggerated evidence of Claimant's social interactions, to wit, that speaking on the phone with family or attending church for a few hours a week cannot equate with her ability to perform work with significant social interaction. (*Id.* at PageID # 895). Because ALJ Thomas never mentioned Claimant's ability to interact with others or any evidence related to her social functioning in her RFC assessment, Claimant submits remand is warranted. (*Id.* at PageID # 896).

The Commissioner responds that in forming Claimant's RFC, ALJ Thomas thoroughly and appropriately considered the evidence, including evidence regarding her mental functioning, and reasonably determined she did not require mental restrictions. (DN 16, at PageID # 914). The Commissioner contends Claimant is confusing the steps of the administrative process and that an ALJ is not automatically required to include limitations from their step-two severity analysis into their subsequent RFC determination. (*Id.*). Though Claimant believes she has proven limitations

in interacting with others, the Commissioner clarifies that she has not cited any mental health evidence that would support the addition of social functioning limitations in the RFC. (*Id.* at PageID # 926). The Commissioner maintains ALJ Thomas was not required to add restrictions to a hypothetical to the VE or to add restrictions to the RFC determination relating to Claimant's social functioning because such restrictions were not supported by Claimant's record. (*Id.* at PageID # 926-27). The Commissioner explains that ALJ Thomas adequately supported her decision to not include mental limitations in Claimant's RFC throughout her entire opinion, including at step two and in evaluating the psychological medical opinions of record. (*Id.* at PageID # 927-28). ALJ Thomas was not required to discuss every single piece of evidence or medical finding, the Commissioner concludes. (*Id.*).

Challenging the Commissioner's assertion that she has not proven she was experiencing limitations in mental functioning, Claimant replies that ALJ Thomas found she was mildly limited, rather than not limited, in her ability to interact with others. (DN 17, at PageID # 934-35). Remand must occur, Claimant argues, because the RFC must account for all proven limitations, including mild limitations arising from non-severe impairments. (*Id.*). Claimant also recognizes that an ALJ is not *required* to include mild mental limitations from step two in an RFC finding but specifies that ALJ Thomas was required to explain the basis of her RFC findings, particularly where the ALJ found mild limitations were proven by the evidence. (*Id.* at PageID # 936). Claimant further argues that the ALJ ignored a good deal of testimony relating to social functioning, including the testimony from the VEs that Claimant's past relevant work would require frequent or constant contact with others in the workplace. (*Id.* at PageID # 938). The VEs' testimony, Claimant alleges, demonstrates ALJ Thomas' failure to properly address the impact of Claimant's social limitations on her ability to perform her past work, resulting in reversible error. (*Id.*).

The Parties agree that an ALJ is not required to incorporate mild mental impairments into an RFC assessment. *See Smith v. Comm'r of Soc. Sec.*, -- F. Supp. 3d --, 2024 WL 416374, at *3 (E.D. Mich. Feb. 5, 2024); *Phillips v. Comm'r of Soc. Sec.*, No. 3:22-cv-01144, 2023 WL 4078204, at *6 (N.D. Ohio Apr. 4, 2023) ("[M]ild limitations do not automatically mandate specific limitations in the RFC.")). Even so, district courts throughout the Sixth Circuit and beyond have found that an ALJ must still adequately explain how a claimant's mild mental impairments affect the RFC determination. *See Miller v. O'Malley*, No. 5:23-CV-209-HAI, 2024 WL 315685, at *7 (E.D. Ky. Jan. 26, 2024) ("In drafting the RFC, the ALJ is required to consider a claimant's non-severe mental health limitations but is not required to inevitably incorporate them in the RFC."); *Mark E. v. Kijakazi*, No. 20-CV-2047 (PAM/JFD), 2021 WL 6066260, *9-10 (D. Minn. 2021) ("a proper RFC analysis need not be identical to findings at step two, but the analysis must demonstrate that the entire record was considered in the formulation of the RFC, including mental limitations found to be non-severe") (citing *Gann v. Colvin*, 92 F. Supp. 3d 857, 885 (N.D. Iowa 2015)); *Simon-Leveque v. Colvin*, 229 F.Supp.3d 778, 787 (N.D. Ill. 2017) ("the ALJ still must affirmatively *evaluate* the effect such mild limitations have on the claimant's RFC."); *Ceol v. Berryhill*, No. 3:25-CV-315-CCS, 2017 WL 1194472, at *10 (E.D. Tenn. Mar. 30, 2017) (finding error where ALJ "provided no discussion in the RFC portion of the decision as to whether the Plaintiff's mild limitations caused by the Plaintiff's anxiety produced work-related limitations.").

Claimant's case is distinguishable from many of the cases she cites where the court remanded based on an ALJ's failure to properly address mild limitations in mental functioning in the RFC. This is neither a case where the Court cannot discern why the RFC omits mental limitations because the ALJ did not in any way address the matter, *see Richardson v. Saul*, 511 F. Supp. 3d 791, 799 (E.D. Ky. 2021), nor a case where the ALJ made "no mention of the claimant's

mental impairment in the RFC analysis," *Shamsud-Din v. Comm'r of Soc. Sec.*, No. 16-CV-11818, 2017 WL 3574694, at \*6 (E.D. Mich. July 24, 2017), *report and recommendation adopted*, 2017 WL 3531438 (E.D. Mich. Aug. 17, 2017).

ALJ Thomas ended her Step-Two analysis by clarifying the distinction between steps two and four of the sequential evaluation process:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(Tr. 22). ALJ Thomas' clarification demonstrates that she considered Claimant's mild limitations in later assessing her RFC. What is more, ALJ Thomas begins her RFC analysis by stating she has "considered all symptoms," (Tr. 23), and concludes her RFC by reiterating that she "consider[ed] the record as a whole" (Tr. 26). Beyond these general statements, ALJ Thomas considered the record evidence of Claimant's mental health impairments, or lack thereof, while evaluating the opinion evidence from the State psychological consultants and Dr. Lynch. She cited to Claimant's most recent hearing testimony (which did not include any allegations of mental health limitations), her denial of mood changes and depression during a cardiology appointment in November of 2018 (Tr. 608), and her treating providers' objective observations that Claimant demonstrated appropriate mood, pleasant affect, and good memory (Tr. 631, 723, 726, 830, 836). ALJ Thomas then considered Claimant's overall lack of ongoing mental health treatment against this evidence and determined that no evidence demonstrated any functional mental impairment.

Beyond citing to the allegedly consistent psychological medical opinions, Claimant fails to point to specific record evidence that contradicts ALJ Thomas' conclusions. The Court finds

21

ALJ Thomas' RFC determination as to Claimant's mental impairments traces a clear path of reasoning and is supported by substantial evidence in the record.[7] Likewise, because ALJ Thomas' RFC is supported by substantial evidence in the record, she was not required to include functional limitations in Claimant's ability to interact with others in the workplace in a hypothetical to the VE. ALJ Thomas properly relied upon the hypothetical she posed to the VE that accurately incorporated the well-supported limitations of record.

## IV. Recommendation

ALJ Thomas' decision is supported by substantial evidence in the record and comports with the applicable regulations; accordingly, the Court **RECOMMENDS** the Commissioner's decision be **AFFIRMED**.

---

[7] *See Smith*, 2024 WL 416374, at * 3 (finding no error where ALJ specifically mentioned plaintiff's mental impairments in RFC analysis and stated his determination was based on the entire record and all of plaintiff's symptoms, mental and physical); *Todd J. v. Comm'r of Soc. Sec.*, No. 3:22-cv-324, 2023 WL 6533824, at * 6 (S.D. Ohio Oct. 6, 2023) (finding no error where ALJ considered various mental opinions and explained his basis for reaching such conclusions, noted plaintiff's lack of mental health treatment and failure to testify to significant mental difficulties during hearing, and specifically stated he did not include any mental limitations in RFC because he found plaintiff's impairments caused no more than mild impairment); *Wardlow v. Kijakazi*, No. 3:20-CV-00828-RSE, 2022 WL 1748607, at *6 (W.D. Ky. May 31, 2022) (finding analysis of mental impairments in RFC was supported by substantial evidence where final sentence of step-two analysis indicated ALJ considered "mild limitations" in paragraph B criteria in forming RFC determination).

NOTICE

Therefore, under the provisions of 28 U.S.C. " 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.  Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court.  If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).

Copies:          Counsel of Record